Samuel R. Miller (SBN 66871)
srmiller@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

David T. Buente Jr. (to be admitted *pro hac vice*)
dbuente@sidley.com
Joseph R. Guerra (to be admitted *pro hac vice*)
jguerra@sidley.com
Roger R. Martella Jr. (to be admitted *pro hac vice*)
rmartella@sidley.com
R. Juge Gregg (to be admitted *pro hac vice*)
rjgregg@sidley.com
Quin M. Sorenson (to be admitted *pro hac vice*)
qsorenson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

**Attorneys for Proposed Intervenor-Defendant
The National Association of Manufacturers**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEC L., et al., | Case No. 3:11-cv-02203-EMC |
| *Plaintiffs*, | Assigned to: Edward M. Chen |
| vs. | **NOTICE OF MOTION AND MOTION TO INTERVENE BY NATIONAL ASSOCIATION OF MANUFACTURERS** |
| LISA P. JACKSON, et al., | |
| *Defendants*. | Date: November 28, 2011<br>Time: 2:30 p.m.<br>Place: Courtroom 5, 17th Floor |

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

NOTICE OF MOTION AND MOTION ................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 5

I.   The NAM Is Entitled To Intervene As Of Right Pursuant To Federal Rule Of Civil Procedure 24(a) ................................................................................................................. 5

   A.   This Motion to Intervene is timely. ....................................................................... 6

   B.   The NAM's Members Have Protectable Interests That Would Be Affected By Plaintiffs' Suit. ........................................................................................................ 7

   C.   Disposition Of This Case May Impair Or Impede The NAM's Ability To Protect Its Interests And The Interests Of Its Members. .................................................... 9

   D.   The NAM's Interests May Not Be Adequately Represented By The Government ............................................................................................................................... 10

II.  In The Alternative, The NAM Should Be Granted Leave For Permissive Intervention Under Federal Rule Of Civil Procedure 24(B) .................................................................. 12

III. Conclusion ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Alaska v. Suburban Propane Gas Corp.*,
   123 F.3d 1317 (9th Cir. 1997) ..................................................................................................6

*Conservation Law Found. of New England v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) ......................................................................................................8

*Conservation Nw. v. U.S. Forest Service*,
   2005 WL 1806364 (E.D. Wash. July 28, 2005) .....................................................................13

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ...............................................................................................11

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ...................................................................................................6

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) ..........................................................................................6, 9, 11

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) .....................................................................................9, 10, 11

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ...................................................................................................7

*In re Cal. Micro Devices Sec. Litig.*,
   168 F.R.D. 276 (N.D. Cal. 1996) .............................................................................................7

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) .................................................................................................12

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994) .................................................................................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................................................6, 10

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) .................................................................................................................4

*Military Toxics Project v. EPA*,
   146 F.3d 948 (D.C. Cir. 1998) ...........................................................................................6, 10

*Natural Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ...............................................................................................11

*Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*,
  578 F.2d 1341 (10th Cir. 1978) ..................................................................................11

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ........................................................................................12

*Portland Audubon Soc. v. Hodel*,
  866 F.2d 302 (9th Cir. 1989) ........................................................................................6

*Sagebrush Rebellion, Inc. v. Hodel*,
  790 F.2d 760 (9th Cir. 1986) ................................................................................9, 10

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) ..........................................................................7, 10, 11

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993) ..................................................................................7, 8

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ......................................................................................11

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ........................................................................................7

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ....................................................................................................11

*UAW, Local 283 v. Scofield*,
  382 U.S. 205 (1965) ....................................................................................................12

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ...........................................................................6, 8, 10

*United States v. Oregon*,
  913 F.2d 576 (9th Cir. 1990) ........................................................................................7

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ......................................................................................6

STATUTES

5 U.S.C. §500 *et seq.*........................................................................................................8

OTHER AUTHORITIES

75 Fed. Reg. 25,324 (May 7, 2010) ..................................................................................4

Fed. R. Civ. P. 12 ...............................................................................................................6

Fed. R. Civ. P. 24 ..........................................................................................5, 6, 9, 10

iii

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** at November 28, 2011, at 2:30 p.m. or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward M. Chen, located on the 17th Floor of the Federal Courthouse at 450 Golden Gate Avenue, San Francisco, California, the National Association of Manufacturers (NAM) will move to intervene in the above caption case pursuant to Fed. R. Civ. P. 24.

The NAM represents small and large manufacturers in every industrial sector and in all 50 states. If Plaintiffs succeed in their goal of requiring that greenhouse gas (GHG) emissions be capped at 2011 levels by January 1, 2013 and reduced by 6% each year thereafter, the NAM's members will be harmed in various ways. For example, the NAM's members that produce, refine or use conventional fossil fuels will be harmed, as Plaintiffs' suit seeks the virtual elimination of the use of such fuels in the United States. More generally, the dramatic reductions in U.S. GHG emissions that Plaintiffs seek could increase the production and transportation costs for all of the NAM's members, decreasing their global competitiveness and driving jobs and businesses abroad. Since the NAM's significantly protectable interests are at stake in this litigation, the NAM should be permitted to intervene in this case as of right. In the alternative, the NAM requests that it be granted permissive intervention.

Defendants do not object to intervention by the NAM. Counsel for Plaintiffs take no position on the motion until they can review it except to object to any delay in the Court considering Plaintiffs' motion for a preliminary injunction.

This motion is supported by the accompanying Memorandum and Declaration of Dr. Chad Moutray.

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

The National Association of Manufacturers (the NAM), the nation's largest industrial trade association representing the manufacturing sector of the United States economy, hereby moves to intervene in this action filed by WildEarth Guardians, Kids vs. Global Warming and five individuals (collectively Plaintiffs). Through this extraordinary suit, Plaintiffs seek to preempt the federal legislative and regulatory processes through which social, environmental, economic and national security policies are established under our Constitution, and instead use the federal judiciary to compel massive societal changes that Plaintiffs believe are necessary to address global warming. Indeed, Plaintiffs have asked this Court to issue an injunction forcing no fewer than six federal agencies (Defendants) to take "all necessary actions to reduce $CO_2$ emissions in the United States by at least six percent per year beginning in 2013." *See* Alec L., *et al.*, Amended Complaint for Declaratory and Injunctive Relief (Compl.) at 6-7 (Dkt. #4) (emphasis in original). Among other goals, Plaintiffs seek to completely eliminate the use of conventional fossil fuels in the United States. Compl. at 35.

The NAM represents small and large manufacturers in every industrial sector and in all 50 states. Moutray Decl. ¶ 8. On behalf of all of its more than 12,000 members—which include leading members of the coal, oil and natural gas sectors, petroleum refiners, and petrochemical producers, as well as thousands of manufacturing companies that are heavily reliant on the availability of reasonably-priced energy, and which themselves emit greenhouse gases (GHGs)—the NAM seeks to intervene in this case to ensure that the abrupt and economically devastating policy mandates that Plaintiffs seek are not imposed on the NAM's members and the entire U.S. economy through this case. The NAM's mission is to enhance the competitiveness of manufacturers by shaping a legislative and regulatory environment conducive to U.S. economic growth and to increase understanding among policymakers, the media and the general public about the vital role of manufacturing to America's economic future and living standards. *Id.* The NAM and its members are strongly affected by laws governing the manufacturing sector and regulatory restrictions on

1

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

emissions, energy and manufacturing.  *Id.*

If Plaintiffs succeed in eliminating or massively reducing U.S. conventional fuel consumption and manufacturing processes that emit GHGs, the NAM's members that directly produce or refine conventional fuels—or make the tools and equipment to do so—will obviously be harmed.  In addition, the NAM's members that power their facilities with conventional fuels or who directly emit GHGs as part of their manufacturing processes may be forced to invest in massive changes to their manufacturing infrastructure or to abandon it.  *Id.* ¶ 18.  Further, the dramatic reductions in U.S. GHG emissions that Plaintiffs seek could increase the production and transportation costs for all of the NAM's members, decreasing their global competitiveness and driving jobs and businesses abroad, particularly to locations where GHG emissions could continue unabated.  *Id.* ¶¶ 19-24.  Plaintiffs seek this unprecedented restructuring of the economy through an injunction by this Court, but, moreover, without any involvement by affected stakeholders, such as the NAM's members.  Finally, the NAM's members are already subject to a multitude of regulations addressing air emissions, including a number that focus squarely on GHG emissions.  *Id.* ¶ 8.  Thus, if Plaintiffs' requested relief is granted and new GHG rules are rushed out, the NAM may face conflicting regulations.  For all of these reasons, it is critical that the NAM have the opportunity to intervene.

**Summary of Case**

On July 27, 2011, Plaintiffs filed an amended complaint alleging that Defendants violated their alleged duties as trustees of the natural resources of the United States by allowing global GHG levels to increase.  Compl. at 38-39.  Plaintiffs allege that the world is "confronted with an atmospheric emergency" that is linked to Defendants' "actions of causing, approving and allowing too many carbon emissions into Earth's atmosphere."  Compl. at 2-3.  Plaintiffs link this "atmospheric climate emergency" to a host of harms which they allege are already ongoing or will happen some time in the future.  Compl. at 18-32.  Plaintiffs have filed similar suits against a number of state governments and filed administrative petitions the remainder of the fifty states.[1]  On

---

[1] *See* http://ourchildrenstrust.org/sites/default/files/iMatter_Legal_Release_11.05.01.pdf.

2

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

September 28, 2011, Plaintiffs filed a Motion for Preliminary Injunction (Dkt. #24) (hereinafter PI Motion) asking this Court to force the government to take immediate action, which is currently set for hearing on November 28, 2011. Dkt. #62.

Plaintiffs seek to force the federal government to eliminate the use of conventional fossil fuels in the United States and "transition to an almost fully renewable energy system by at least 2050." PI Motion at 9; Compl. at 35 (calling for "the phase out [of] fossil fuels by about 2050"). They ask this Court to supervise and orchestrate a wholesale, economy-wide change in energy use, requiring the nation to rely on energy efficiency, solar and wind energy and other energy sources such as jet fuel made from algal biofuels. Compl. at 7, 35. In their PI Motion, Plaintiffs specifically ask the Court to require Defendants to:

> [S]ubmit a Climate Recovery Plan to this Court setting forth the means to implement the necessary emissions reductions by January 1, 2013 to meet the following reduction trajectory: (1) not allowing United States carbon dioxide ("CO2") emissions to exceed levels existing as of September 1, 2011; and (2) prohibiting significant deviation from the benchmark mitigation scenario of a minimum 6% annual CO2 reduction trajectory to return atmospheric CO2 levels to 350 ppm by December 31, 2099.

PI Motion at 1. Further, Plaintiffs seek an order declaring that "Defendants … must collaboratively take action to … enable global <u>fossil fuel $CO_2$</u> emissions to peak by 2012 and reduce <u>global fossil fuel $CO_2$</u> emissions by at least six percent per year through at least 2050." Compl. at 39 (emphases added).

Plaintiffs ask the Court for a preliminary injunction requiring Defendants to submit a governmental "Climate Recovery Plan" to this Court by March 19, 2012, PI Motion at 1, and for the Court to ultimately approve, thereby effectively appointing this Court as a special master for all domestic energy use and the arbiter of the each technology that will constitute America's energy future. Compl. at 7. Even if the Court were to act immediately after the November 28, 2011 hearing on the PI Motion and issue an order requiring submittal of such a plan, that unrealistic schedule would still only leave the government with approximately three and a half months to develop and finalize the plan. Even if it were possible to develop a plan in such a short time to fundamentally

3

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

alter the nation's energy infrastructure,[2] there would not be any time or process for the NAM's members and other stakeholders to provide any meaningful public input.

**Interests of Proposed Intervenor-Defendant**

The NAM is the nation's largest industrial trade association and its members may be directly and severely impacted by the outcome of this litigation. The immediate capping of GHG emissions and annual 6% reductions in $CO_2$ emissions that Plaintiffs are seeking would significantly harm the NAM's members that directly produce, refine and use conventional fuels. Moutray Decl. ¶ 17. The NAM's members include many of the major oil, coal and natural gas producers, petroleum refiners, and petrochemical producers, as well as manufacturing companies that make the tools and components critical to such industries. *Id*. Obviously, immediate reductions—and eventual elimination—of conventional fuel use is a central business concern for these members of the NAM. *Id.* In addition, many of the NAM's members rely on conventional fuels to power their manufacturing processes and move their goods, and have significantly invested in the infrastructure necessary to effectively and efficiently utilize, transport and combust particular conventional fuels. Further, many companies directly emit GHGs either through energy combustion or through manufacturing processes themselves. *Id.* ¶ 18. The elimination of conventional fuels would require these NAM members—at a minimum—to re-engineer their manufacturing processes and invest substantial capital in converting their facilities and fleets to new sources of power, assuming such power is available within any practical or cost effective constraint. *Id.*

More generally, the unprecedented GHG reductions that Plaintiffs are seeking could harm the U.S. manufacturing sector by driving up input costs for manufacturers. *Id.* ¶ 19. The costs incurred in other sectors of the economy, such as the utility sector, from new GHG regulations will be transferred to the manufacturing companies, regardless of whether they are emitters of GHGs, through higher electricity costs. *Id.* These higher costs, which are outside the control of

---

[2] By way of context, Congress has been debating sweeping climate change legislation of the type that Plaintiffs seek since at least the Clinton administration. Further, it took EPA three years to promulgate GHG regulations for just the automotive sector once the Supreme Court issued is decision on the subject in *Massachusetts v. EPA*, 549 U.S. 497 (2007). 75 Fed. Reg. 25,324 (May 7, 2010).

4

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

manufacturers, will exacerbate a global competitive disadvantage that is already a significant challenge for manufacturers operating in the United States. *Id.* GHG regulations will add to the structural non-production costs on U.S. manufactures that will further reduce their global competitiveness and market share both domestically as well as in other economies. *Id.* ¶¶ 19-24.

Thus, the NAM's members have significant economic, legal and policy interests in this lawsuit, as a ruling in Plaintiffs' favor could result in an economy-wide shift in the energy sources relied upon by our nation, leading to a dramatically increased burden on the industry at a time when they can least afford it due to pressures of the United States economy and increased competition from nations that do not have any GHG constraints. In the face of such a result, the NAM's members would likely have to significantly change, if not entirely abandon, their manufacturing and business practices. *Id.* ¶¶ 17-19. Re-aligning the entire energy-mix of our country and potentially eliminating all conventional fuels will dramatically increase the cost of manufacturing, making the United States far less competitive and driving domestic manufacturing abroad. *Id.* ¶¶ 19-24. These burdens could injure many—if not all—of the NAM's members. The NAM's members interests are particularly likely to be harmed because Plaintiffs' requested remedy provides no opportunity for public input. Further, barring intervention by the NAM, this Court will not have the opportunity to hear from the companies most impacted by Plaintiffs' requested remedy, a remedy that has high likelihood of conflicting with existing environmental regulations. The NAM therefore seeks to intervene in this case to oppose Plaintiffs' efforts to reshape the economy to their liking. For the reasons stated below, this Court should grant the NAM's motion for leave to intervene.

## ARGUMENT

**I.    The NAM Is Entitled To Intervene As Of Right Pursuant To Federal Rule Of Civil Procedure 24(a)**

Federal Rule of Civil Procedure 24(a) states in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit applies a four part test for determining if an applicant has a right to

5

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

intervene under Rule 24(a): (1) the motion must be timely; (2) the applicant must assert a "significantly protectable" interest relating to property or a transaction that is the subject matter of litigation; (3) the applicant must be situated so that disposition of the action may as a practical matter impair or impede the applicant's interest; and (4) the applicant's interest must be inadequately represented by the parties.[3] *See*, *e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995). The Ninth Circuit follows "practical and equitable considerations and construe[s] the Rule broadly in favor of proposed intervenors." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted). There is a "'liberal policy in favor of intervention [which] serves both efficient resolution of issues and broadened access to the courts.'" *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (citations omitted). The purpose of this liberal interpretation is to involve "as many apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation Council*, 66 F.3d at 1496; *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The NAM satisfies each prong of this test and therefore should be permitted to intervene as of right.[4]

### A. This Motion to Intervene is timely.

Timeliness is evaluated based on: (i) the stage of the proceedings; (ii) the prejudice to the other parties; and (iii) the reasons for and length of delay, if any. *See*, *e.g.*, *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997); *United States v. Oregon*, 913 F.2d 576,

---

[3] A movant is not required to satisfy the requirements for Article III standing when it satisfies the requirements for intervention as of right under Rule 24(a). *See Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 n. 1 (9th Cir. 1989). Nonetheless, the NAM meets Article III standing requirements because its members would plainly be affected if Plaintiffs were to obtain the relief they seek, and the individual participation of NAM's members in the case is not required. *See Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding trade association had standing in challenge of EPA regulation where some of its members were subject to challenged regulation). The interests alleged as grounds for intervention are sufficient to demonstrate that NAM satisfies the test of constitutional standing and associational standing on behalf of their members. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As discussed above and in the attached Moutray declaration, NAM's members face potential injuries that would provide them with their own right to sue, those injuries are related to NAM's organizational purposes, and the nature of the claim and the relief requested is not such that participation of NAM's members in the lawsuit is required.

[4] Pursuant to the Rule 24(c)'s requirement that an applicant for intervention accompany its motion with "an original of the pleading setting forth the claim or defense for which intervention is sought," NAM is also filing today an accompanying Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(1), (6).

6

**MOTION TO INTERVENE**
CASE NO. 3:11-cv-02203-EMC

588 (9th Cir. 1990). This case is clearly timely under these factors.

This case is still in its earliest phases. By their own report, Plaintiffs did not perfect service until October 11, 2011 (Dkt. #57)—less than three weeks ago. Consequently, granting the NAM's Motion will not cause any material delays. Furthermore, because the NAM proposes to comply with forthcoming scheduling orders, and will endeavor to avoid duplication of issues with the other parties, there is no danger of material prejudice to Plaintiffs or to Defendants. In short, under any test of timeliness, this Motion satisfies this provision of Rule 24(a)(2). *Cf. Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (allowing environmental groups to intervene four months after the complaint was filed, even though plaintiff had already moved for a preliminary injunction); *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 276, 277 (N.D. Cal. 1996) (finding timely a motion for permissive intervention filed at pleading stage).

### B. The NAM's Members Have Protectable Interests That Would Be Affected By Plaintiffs' Suit.

The sufficiency of an intervenor's interest "is a practical, threshold inquiry [and n]o specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (*citing Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). "It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (intervenor's interest need not be protected by statute put at issue by complaint so long as it is protected by law and relates to claim). This requirement is readily satisfied here.

The relief Plaintiffs seek—unprecedented, severe and immediate restrictions on GHG emissions and the virtual elimination of conventional fuels—will plainly affect the legally protected interests of the NAM's members. Such relief would adversely impact and may even eliminate the very businesses of those NAM members that are engaged in the production of such fuels and manufacturing to support the energy industry, Moutray Decl. ¶ 17; and it would likely require a sea-change in the operations of those NAM members that rely on such fuels or directly emit GHGs. *Id.* ¶ 18. The relief sought would thereby undermine massive investments both groups of members have

7

made over the course of many decades in the innumerable physical and tangible assets of their businesses. Under an abrupt and across-the-board switch in the nation's energy infrastructure of the magnitude Plaintiffs are proposing, the NAM's manufacturing members would be required to radically reshape their businesses and operations, and consider shutting down domestic manufacturing in the wake of competition from other nations that are not subject to such constraints. *Id.* ¶¶ 17-24.

This Court has recognized that where a lawsuit "would affect the use of real property owned by the intervenor by requiring the defendant to change the … [the manner in which it] regulate[s] the use of that real property," such interests "are squarely in the class of interests traditionally protected by law." *Sierra Club*, 995 F.2d at 1483. *See also generally Landgraf v. USI Film Products,* 511 U.S. 244 (1994) (discussing the centrality of settled and legitimate expectations under various fundamental legal principles). The economic upheaval that would follow from the relief Plaintiffs seeks thus establishes both that the NAM and its members have legally protected interests and that there is a direct relationship between those interests and "'resolution of plaintiffs' claim.'" *City of Los Angeles*, 288 F.3d at 398 (citation omitted); *Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 41-44 (1st Cir. 1992) (holding that commercial fishermen impacted by regulatory plan to address overfishing had a recognizable interest in the timetable for implementing that plan). Here, as the NAM and its members will be the parties burdened with satisfying the potentially dramatic fuel switches and GHG reductions proposed by Plaintiffs, the NAM clearly satisfies this test for having a recognizable interest.

In addition, Plaintiffs seek to deprive the NAM's members of these investments without affording them any say in the matter. The Administrative Procedure Act (APA) reflects the bedrock principle that businesses affected by federal executive branch regulatory measures have a legal right to participate in the development of, and ultimately to challenge, such measures. *See generally*, 5 U.S.C. §500 *et seq.* Yet here, Plaintiffs ask this Court to order Defendants to develop a comprehensive "Climate Recovery Plan" with no input whatsoever from the countless businesses that may be dramatically affected by it. To the contrary, plaintiffs seek a judicially mandated process whereby representatives of Plaintiffs may submit comments to the Court with respect to any

8

aspect of the "Climate Recovery Plan" that they find unsatisfactory. Compl. at 7. Promulgation of regulations affecting virtually every aspect of the businesses of the NAM's members without any meaningful participation by those members would thus violate over half a century of settled administrative law principles, and thus affect this additional, protected legal interest of the NAM's members as well.[5]

Finally, issuing rushed rules governing GHG emissions is likely to be particularly harmful, as there is the real possibility that those rules will conflict with existing regulations and policies that weigh numerous considerations including environmental protection, energy security, and international trade issues. For example, the NAM's members are already subject to many regulations addressing air emissions. Moutray Decl. ¶ 8. These regulations include a number that focus squarely on GHG emissions. *Id.* Without careful consideration and the active involvement of the NAM and other stakeholders in developing the rules, it is highly likely that sweeping new GHG rules will create conflicts and inconsistencies with the legal regime that NAM's members already face.

### C. Disposition Of This Case May Impair Or Impede The NAM's Ability To Protect Its Interests And The Interests Of Its Members.

To show impairment of interests for the purposes of Rule 24(a)(2), a proposed intervenor need show only that the disposition of an action "*may* as a practical matter" impede the intervenor's ability to protect its interests in the subject of the action. Fed. R. Civ. P. 24(a)(2) (emphasis added). In evaluating this question, "the court is not limited to consequences of a strictly legal nature." *Forest Conservation Council*, 66 F.3d at 1497-98. Where the relief sought by the Plaintiffs would have direct, immediate, and harmful impact on a third party's interests, that adverse impact is sufficient to satisfy Rule 24(a)(2). *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760 (9th Cir. 1986). Further, an entity has sufficient interests to intervene where the proceeding has the potential to subject the movant to

---

[5] Indeed, Plaintiffs seek to compound this denial of fundamental administrative law protections through their preliminary injunction motion, which asks this Court to require the submission by March 19, 2012 of a "Climate Recovery Plan" that would fundamentally restructure the nation's economy without any provision for public involvement in the creation of the plan. Dkt. # 41 at 2.

9

**MOTION TO INTERVENE**
CASE NO. 3:11-CV-02203-EMC

governmental regulation or significantly change how the movant does business. *See*, *e.g.*, *Lujan*, 504 U.S. at 561-62; *Fund for Animals*, 322 F.3d at 735; *Military Toxics Project*, 146 F.3d at 954.

As noted previously, the declaratory and injunctive relief that Plaintiffs seek would force the government to abruptly cap GHG emissions and may virtually eliminate conventional fuel use across the nation and thereby would dramatically increase the input costs for manufacturing. Such shifts could impact essentially every single one of the NAM's members. Moutray Decl. ¶¶ 16-24. The dramatic GHG restrictions that Plaintiffs propose will likely add non-production costs on U.S. manufactures that may reduce further NAM's members' global competitiveness and market share both domestically as well as in other economies. *Id.* ¶¶ 19-24. As a less competitive location to produce, the U.S. manufacturing sector would end up smaller and employ fewer workers, as companies may be encouraged to locate facilities and operations in other countries outside the regulatory reach of the United States. *Id.* Further, Plaintiffs are seeking to force the government to develop regulatory measures to eliminate GHG emissions while depriving affected businesses of their rights under the APA to participate in the development of such measures. Intervention of right is warranted where there is even a *possibility* that the remedies sought by Plaintiffs will harm the interests of the NAM's members, and thereby the NAM itself. *See* Fed. R. Civ. P. 24(b). Particularly given that Plaintiffs seek preliminary and permanent injunctive relief, intervention of right is appropriate. *See City of Los Angeles*, 288 F.3d at 399; *Sagebrush Rebellion*,713 F.2d at 528 (where relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, the party satisfies the "interest" test), *aff'd*, *Sagebrush Rebellion*, 790 F.2d 760; *see also* Fed. R. Civ. P. 24 advisory committee's notes to 1966 Amend. ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene ….").

**D.   The NAM's Interests May Not Be Adequately Represented By The Government**.

The requirement under Federal Rule of Civil Procedure 24(a)(2) to show inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). "A showing that existing

10

representation is inadequate 'is not onerous.'" *Sagebrush Rebellion*, 713 F.2d at 528. In assessing this factor, a court must consider whether "the interests of a present party to the suit are such that it will *undoubtedly* make all of the intervenor's arguments[;]" whether "the present party is capable of and willing to make such arguments[;]" and whether "the intervenor would not offer any necessary element to the proceedings that the other parties would neglect." *County of Fresno*, 622 F.2d 436, 438-39 (9th Cir. 1980) (emphasis added).

The NAM's interests here include protecting the legal rights and economic interests of its members by opposing Plaintiffs' attempt to have this Court force an abrupt rewrite of the energy policy of the United States. Defendants cannot be expected to adequately represent the NAM's interests. As government agencies, Defendants' are focused on a broad "representation of the general public interest," not the "narrower interest" of certain businesses. *Forest Conservation Council*, 66 F.3d at 1499 (noting that a government agency was "required to represent a broader view than the more narrow, parochial interests of" the intervenors); *Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986). This private interest / public interest distinction has justified intervention in many other cases. *See*, *e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *County of Fresno*, 622 F.2d at 438-39; *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977); *Fund for Animals*, 322 F.3d at 736; *Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345-46 (10th Cir. 1978).

In addition, Defendants, who are currently implementing GHG controls through numerous regulations and other measures, cannot be expected to adequately represent the NAM's interests regarding the regulation of GHG emissions. The NAM has repeatedly expressed concern regarding aspects of the federal government's approach to regulating and controlling GHG emissions from a wide range of sources and has challenged a number of Defendant's GHG regulations in court as well as raising concerns on GHG regulation proposed by the federal government through notice and comment opportunities. Moutray Decl. ¶¶ 25-26. Thus, the NAM's interests are not in any way coterminous with Defendants' interest as reflected in the GHG controls and measures they have thus far adopted.

## II. In The Alternative, The NAM Should Be Granted Leave For Permissive Intervention Under Federal Rule Of Civil Procedure 24(B)

Federal Rule of Civil Procedure 24 contemplates two forms of intervention—intervention of right and permissive intervention—and a court may grant an intervenor's motion on either basis. *UAW, Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Permissive intervention should be allowed when: (1) the applicant has independent grounds for jurisdiction; (2) the applicant's motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common, provided that intervention will not unduly delay the litigation or prejudice the original parties. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). Under this standard, neither the inadequacy of representation, nor a direct interest in the subject matter of the action, need be shown. *Id.* at 1108.

As previously demonstrated, the NAM's Motion to Intervene is timely, will not cause undue delay, and will not prejudice Plaintiffs or Defendants. Moreover, as discussed above, the NAM possesses legally protectable interests in its members' economic interests and legal rights in current and future contracts and transactions subject to Plaintiffs' challenge. The potential for harm to those interests from Plaintiffs' suit provides an independent basis for jurisdiction, particularly given the minimal showing required by Federal Rule of Civil Procedure 24(b). *See*, *e.g.*, *Keith v. Volpe*, 858 F.2d 467, 477 (9th Cir. 1988) (finding a project developer satisfied the jurisdiction requirements because the suit pertained to whether its development could be constructed).

As previously noted, the NAM's members' economic and legal interests are directly at issue in this suit, and thus the NAM's own interests are at issue. The NAM has a concrete interest in the production, refining and use of conventional fuels in the United States, as well as an interest in stable and competitive energy prices. The NAM is also asserting an interest in its ability to provide input into the policy decisions that will shape the fundamental prospects and global competitiveness of its members. Those activities are directly challenged in this litigation and may be preliminarily or permanently limited and restricted as a result of actions of the Court if the Plaintiffs are successful. For that reason, the NAM's claims and defenses will raise questions of law and fact in common with those raised in the main action between Plaintiffs and Defendants. *See*, *e.g.*, *Conservation Nw. v.*

12

*U.S. Forest Service*, 2005 WL 1806364 (E.D. Wash. July 28, 2005) (finding private company's interest in defending a lumber harvesting project in order to guard against a court order barring it was sufficient to establish common claims and defenses).  Because intervention would contribute to the just and equitable adjudication of the legal questions presented, it should be permitted.

### III.   Conclusion

For the foregoing reasons, the NAM respectfully requests that the Court grant its motion for leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a) with respect to all of Plaintiffs' claims. In the alternative, the NAM requests that it be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b) with respect to all of Plaintiffs' claims.

Dated: October 31, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP

By: /s/ Samuel R. Miller

Attorneys for Proposed Intervenor-Defendant
The National Association of Manufacturers