Samuel R. Miller (SBN 66871)
srmiller@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, California 94104
Telephone:   (415) 772-1200
Facsimile:   (415) 772-7400

David T. Buente Jr. (admitted *pro hac vice*)
dbuente@sidley.com
Joseph R. Guerra (admitted *pro hac vice*)
jguerra@sidley.com
Roger R. Martella Jr. (admitted *pro hac vice*)
rmartella@sidley.com
Ragu-Jara Gregg (admitted *pro hac vice*)
rjgregg@sidley.com
Quin M. Sorenson (admitted *pro hac vice*)
qsorenson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone:   (202) 736-8000
Facsimile:   (202) 736-8711

**Attorneys for Proposed Intervenor-Defendant
The National Association of Manufacturers**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEC L., *et al*.<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>LISA P. JACKSON, *et al*.,<br><br>　　　　Defendants. | Case No. 3:11-cv-02203-EMC<br><br>Assigned to: Edward M. Chen<br><br>**REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE**<br><br>Date: December 15, 2011<br>Time: 3:00 p.m.<br>Place: Courtroom 5, 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

I.    The NAM Is Entitled To Intervene As Of Right Pursuant To Federal Rule Of Civil Procedure 24(a) ............................................................................................................ 2

    A.    The NAM's Members Have Protectable Interests In This Suit, And Those Interests Would Be Impaired Or Impeded By the Disposition of Plaintiffs' Suit ................................................................................................................ 3

    B.    The NAM's Interests Will Not Be Adequately Represented By The Government ................................................................................................................ 6

II.    In The Alternative, The NAM Should Be Granted Leave For Permissive Intervention Under Federal Rule Of Civil Procedure 24(b) ................................................................ 9

III.    Limiting The NAM's Participation In This Case Is Not Appropriate, Given The Potential Impacts Of This Case On The NAM And Its Members .................................................. 10

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Farm Bureau Fed'n v. EPA*,
  No. 1:11-CV-0067, 2011 U.S. Dist. LEXIS 118233 (M.D. Pa. Oct. 13, 2011) ...................3, 6

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ....................................................................................7, 8, 10

*California ex rel Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ..................................................................................................8

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ..................................................................................................8

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
  966 F.2d 39 (1st Cir. 1992)...............................................................................................3, 5

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ...............................................................................................6

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) .................................................................................................6

*Freedom from Religion Found. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ............................................................................................7, 8

*Perry v. Proposition 8 Official Proponents*,
  587 F.3d 947 (9th Cir. 2009) ...............................................................................................10

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) .................................................................................................2

*Western Watersheds Project v. Salazar*,
  No. 4:08-CV-435-BLW, 2011 U.S. Dist. LEXIS 107873 (D. Idaho Sept. 22, 2011) ...........2, 3

*Wild Equity Institute v. City of San Francisco*,
  No. C 11-00958 SI, 2011 U.S. Dist. LEXIS 68064 (N.D. Cal. June 24, 2011).........................3

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ....................................................................................2, 3, 10

## INTRODUCTION

Plaintiffs' opposition to the intervention motion filed by the National Association of Manufacturers (the NAM) rests on an apparently willful refusal to acknowledge the extraordinary—indeed, unprecedented—nature of the relief Plaintiffs seek through this suit.  Plaintiffs claim that, because they do not "request that any *particular* business, industry, or enterprise be singled out to reduce its carbon dioxide emissions," Pls.' Opp. at 5 (emphasis added), there is only a "tenuous" and "speculative" relationship between the subject matter of the litigation and any legally protected interests of the NAM or its members. *Id.* at 4.  In fact, however, Plaintiffs seek a total restructuring of the United States' economy, particularly the manner in which all energy is made and consumed—relief that would affect virtually every investment decision of every manufacturer in the nation.  Any claim that this relief will not impair the legally protected interests of the NAM's members is patently frivolous.

Nor can the NAM protect those interests in future administrative proceedings.  Plaintiffs seek a judicial order that requires greenhouse gas (GHG) emissions to be capped at this September's levels by the end of *next year* and that would "prohibit any significant deviation from the benchmark mitigation scenario described in Plaintiffs' Amended Complaint." Resp. to Mot. to Dismiss at 10.  The NAM cannot protect its members' legal interests by participating in agency proceedings to determine *how to effectuate* a radical overhaul of the nation's economy.  Instead, those interests can be protected only through participation in the proceeding that determines *whether* such an overhaul should occur at all—*i.e.*, this lawsuit.

The federal defendants, moreover, do not adequately represent the NAM's interests.  The mere fact that the government and the NAM both seek dismissal of this lawsuit does not defeat intervention.  And beyond this common interim objective, there is a clear divergence of interests.  Indeed, the NAM has sued the federal government with respect to its GHG regulations and policies.  And in this litigation, the NAM has already advanced arguments that the government has not advanced, and challenged elements of Plaintiffs' preliminary injunction request that the government has not contested.  This divergence in approach at the very outset of this litigation confirms that the

government cannot adequately protect the NAM's interests, and that the NAM's participation is not only necessary to protects its interest, but potentially helpful to the Court.

For many of the same reasons that intervention of right is justified in this case, the Court should alternatively grant permissive intervention. Plaintiffs' allegations that the NAM's participation in this case will unduly delay or complicate the case are simply unfounded.

## I. The NAM Is Entitled To Intervene As Of Right Pursuant To Federal Rule Of Civil Procedure 24(a)

Plaintiffs would have this Court set the intervention bar so high that no putative intervenor could clear it. Plaintiffs claim that the NAM should not be granted intervention because "[b]oth the Federal Defendants and NAM have the same ultimate objective: to prevent Plaintiffs from realizing their requested relief." Pls.' Opp. at 9. If Plaintiffs' approach to intervention were correct, any shared belief between a putative intervenor and an existing party that a suit was ill-founded would bar intervention.

Far from setting such an unduly strict and unreasonable standard, the Ninth Circuit instead has a "'liberal policy in favor of intervention,'" *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (citations omitted), and "construe[s] the Rule broadly in favor of proposed intervenors." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted). In a recent *en banc* decision emphasizing this point, the Ninth Circuit abandoned the "federal defendant" rule, which followed the same logic for National Environmental Policy Act (NEPA) cases as Plaintiffs urge here—namely, that private "parties lack a 'significantly protectable' interest warranting intervention of right under Rule 24(a)(2) because …[the statute at issue] binds only the federal government." *Id.* at 1177. After a thorough analysis, the Court determined that the "federal defendant" bar on intervention was inappropriate because "it eschews practical and equitable considerations and ignores our traditionally liberal policy in favor of intervention." *Id.* at 1178. This case "changes the legal landscape on intervention in environmental cases," lowering the bar for intervention. *Western Watersheds Project v. Salazar*, No. 4: 08-CV-435-BLW, 2011 U.S. Dist. LEXIS 107873 (D. Idaho Sept. 22, 2011).

In light of this liberal policy in favor of intervention, and because the NAM satisfies each

**REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE -
CASE NO. 3:11-CV-02203-EMC**

prong of the Ninth Circuit's four-part test for intervention, the NAM should be permitted to intervene as of right.

### A. The NAM's Members Have Protectable Interests In This Suit, And Those Interests Would Be Impaired Or Impeded By the Disposition of Plaintiffs' Suit.[1]

As the *Wilderness Society* court emphasized, "a prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." 630 F.3d at 1179 (citation omitted). The relief Plaintiffs seek in this litigation will fall directly on the NAM and its members' economic and legal interests, and therefore intervention is appropriate. *See Wild Equity Institute v. City of San Francisco,* No. C 11-00958 SI, 2011 U.S. Dist. LEXIS 68064 (N.D. Cal. June 24, 2011) (allowing intervention by a golfing trade association where a conservation group sought an injunction impacting use of a golf course); *Western Watersheds Project v. Salazar*, No. 4:08-CV-435-BLW, 2011 U.S. Dist. LEXIS 107873 (D. Idaho Sept. 22, 2011) (allowing intervention by cattlemen business associations in case where plaintiffs sought to force agency to revisit hundreds of land use decisions); *Am. Farm Bureau Fed'n v. EPA*, No. 1:11-CV-0067, 2011 U.S. Dist. LEXIS 118233 (M.D. Pa. Oct. 13, 2011) (allowing trade organizations to intervene in a case challenging a plan to manage nutrient discharges to Chesapeake Bay); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992) (allowing intervention by commercial fishing groups in case where plaintiffs sought to force the government to regulate certain fishing).

Plaintiffs' attempt to fundamentally recharacterize this case to avoid any seeming impact to the NAM is disingenuous. Plaintiffs argue that this case deals only with the government's abstract "public trust obligations towards the atmosphere" and "does not directly involve any permits, property, or other interests of NAM or its members." Pls.' Opp. at 4. But this effort at abstraction cannot disguise the dramatic and draconian real-world consequences of the relief Plaintiffs seek.

As the NAM explained in its motion—and Plaintiffs did not rebut—Plaintiffs are seeking a host of changes that will directly impact the NAM and its members. Namely, through this litigation

---

[1] Plaintiffs admit that the NAM's Motion to Intervene is timely. Pls.' Opp. at 1.

Plaintiffs seek:

- <u>to force the elimination of the use of conventional fossil fuels in the United States</u>. PI Motion at 9 (discussing a "transition to an almost fully renewable energy system by at least 2050"); Compl. at 35 (calling for "the phase out [of] fossil fuels by about 2050").

- <u>a wholesale, economy-wide change in the nation's energy use</u>, requiring the nation to shift to reliance on energy efficiency, solar and wind energy and other energy sources, rather than the current energy mix. Compl. at 7, 35.

- <u>an almost immediate cap on the nations' GHG emissions</u>, demanding that emissions be capped at 2011 levels by January 1, 2013. PI Motion at 1.

- <u>continuing and significant reductions in the nations' GHG emissions</u>, requiring that emissions be reduced by 6% per year post-2013. *Id.*

- <u>to require the Defendants to submit a governmental "Climate Recovery Plan" to this Court without any meaningful public comment and on an unrealistic schedule</u>. Plaintiffs' PI Motion request would leave the government with at most three months to develop and finalize a plan to fundamentally reshape the nation's energy sector. PI Motion at 1.

If Plaintiffs are successful in this litigation, each and every one of these demands will directly and dramatically harm the NAM and members.

Further, contrary to Plaintiffs' suggestion (Pls.' Opp. at 3), the connection between Plaintiffs' specific demands and the NAM's members' business operations are neither "tenuous" nor "speculative." For example, Plaintiffs do not deny that they are seeking immediate reductions in— and the eventual elimination of—the use of conventional fuels. These demands obviously would harm the NAM's members that are oil, coal and natural gas producers, petroleum refiners, and petrochemical producers, as well as manufacturing companies that make the tools and components critical to such industries. Declaration of Dr. Chad Moutray ¶17 (Dkt. #66) (hereinafter Moutray Decl.). To suggest that a company does not have a "significantly protectable interest" in the ongoing viability of its core business is absurd. The protectable interests that will be impacted run the gamut

from investment-backed financial expectations, to changed environmental permits, to harmed property interests in idled manufacturing facilities, to interrupted contracts to purchase or sell conventional fuels. *See Am. Farm Bureau Fed'n v. EPA*, 2011 U.S. Dist. LEXIS 118233 (M.D. Pa. Oct. 13, 2011) (rejecting argument that trade associations' members' interests in potential economic impacts to from lawsuit are not "germane to the narrow issues before the court").

Similarly, if Plaintiffs succeed in forcing an abrupt, court-supervised shift in energy use, there are sure to be immediate financial and logistical impacts on companies that rely on conventional fuels to power their manufacturing processes and move their goods. Moutray Decl. ¶18. Further, most if not all of the NAM's members would be harmed by the unprecedented GHG reductions that Plaintiffs are seeking, as those reductions would drive up input costs for manufacturers and reduce their global competitiveness. Moutray Decl. ¶¶ 19-24. Further, the regulations that the government will need to implement to achieve the reductions that Plaintiffs demand will dramatically impact the NAM's members. Just as in *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), where environmentalists sued the government to force regulation of fishing off the coast of New England, the business "groups seeking intervention are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rules will affect the proposed intervenors' business, both immediately and in the future." *Id.* at 43. As the "real targets" of this lawsuit, the NAM's members should be represented in this suit.

Plaintiffs also argue that the NAM would not be harmed by a judicial determination of "what obligations the federal government has to prevent harm to" the atmosphere, Pls.' Opp. at 6, and will not lose its "ability to be part of the public process in the formation of any regulatory action" the government undertakes to fulfill those judicially determined obligations. *Id.* at 3. However, the specifics of Plaintiffs' requests belie that claim. Plaintiffs ask this Court to order Defendants to develop a comprehensive "Climate Recovery Plan" with no provisions for input whatsoever from the businesses that will be affected. PI Motion at 1. Moreover, the Plan itself would require "fossil fuel $CO_2$ emissions to peak by 2012, and [would] prohibit any significant deviation from the benchmark mitigation scenario described in Plaintiffs' Amended Complaint." Resp. to Mot. to Dismiss at 10.

Thus, the NAM and its members may be afforded the right to participate only in subsequent agency proceedings to determine *how* the government should completely restructure the nation's economy—*i.e.*, how to achieve an immediate cap on emissions and six percent reductions each year thereafter in accordance with the benchmark mitigation scenario described in Plaintiffs' Amended Complaint. But the NAM and its members have a clear and fundamental interest in participating in any proceeding to determine *whether* such an overhaul is mandated in the first place. And that interest can only be protected through participation in this litigation, where Plaintiffs seek to resolve this profoundly important issue without participation by affected stakeholders and the broader scientific community.

B.  **The NAM's Interests Will Not Be Adequately Represented By The Government**.

The government will not adequately represent the NAM's interests in this case. The government and the NAM have sharply conflicting positions regarding significant elements of federal regulation of GHG emissions which has led the NAM to challenge the government's GHG regulations in court.[2] Further, the government will not make all of the NAM's arguments in this case—and, as Plaintiffs point out, has already declined to advance significant arguments in response to Plaintiffs' allegations of irreparable harm whereas the NAM has offered both legal and expert rebuttals to these issues. *Compare* Pls.' Reply in Support of PI Motion (Dkt. #100) at 2-3 (arguing that the Court does not need to examine the factors that the government did not address) *with* NAM's Opp. to Pls.' PI Motion (Dkt. #81) (providing expert-backed arguments addressing those factors). The NAM's interests in this case involve the protection of the legal rights and economic interests of its members with respect to federal regulation of GHG emissions. In contrast, the government—which is currently implementing numerous GHG controls—is required to broadly represent the general public interest. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995). Given its broad duties to the public as a whole, the government cannot adequately represent the more focused interests of the NAM and its members. *Dimond v. District of*

---

[2] For a collection of documents from NAM's various court challenges to GHG regulations, s*ee http://namissvr.nam.org/minisites/epa/index.aspx?utm_source=nam&utm_medium=alias&utm_campaign=EPAminisite.*

6
**REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE -
CASE NO. 3:11-CV-02203-EMC**

*Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986).

Plaintiffs are wrong that there is a presumption of adequate representation in this case. In arguing that a presumption of adequate representation should be applied, Plaintiffs rely on cases involving constitutional challenges. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 840 (9th Cir. 2011) (alleging IRS "parsonage exemption" violates establishment clause); *Arakaki v. Cayetano*, 324 F.3d 1078, 1081 (9th Cir. 2003) (alleging that government benefits to native Hawaiians violates equal protection clause). However, there is simply no basis for asserting that a novel attempt to create a sweeping new federal common law by importing and expanding an obscure state common law doctrine is "identical" to those constitutional challenges, where such a presumption may have made sense. As the Ninth Circuit has explained, a "presumption of adequacy is 'nowhere more applicable than in a case where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment.'" *Freedom from Religion Found.*, 644 F.3d at 842. (quoting *California ex rel Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006)). In *Freedom from Religion Foundation* and *Arakaki*, the court was presented with a single legal question that would fully resolve the case: whether a statute was constitutional and would remain in force or was unconstitutional and should be vacated. When only two ultimate outcomes are possible, it is unsurprising that courts sometimes find that putative intervenors share the same ultimate objective with one of the principal parties.

In contrast, here, Plaintiffs merely assert that the NAM and the government share the same *interim* objective of dismissing Plaintiffs' claims. But this common interim goal does not mean that the NAM and the government share the same ultimate objectives with respect to federal regulation of GHGs—the ultimate issue in this case. Should the case progress beyond the motions to dismiss, there is simply no reason to believe that the NAM and the government will take the same position with respect to the ultimate merits and remedy in this case. Indeed, the open-ended nature of Plaintiffs' claims—and the scope and content of the injunction that Plaintiffs are seeking—create myriad opportunities for divergence with respect to *ultimate* objectives that are simply not present in constitutional challenges.

Second, in any event, the indisputable divergence of interests between the NAM and the

government regarding GHG regulation is likely to lead to divergent arguments and, with respect to Plaintiffs' PI Motion, has already done so. Plaintiffs' brief ignores entirely the numerous instances where the NAM and the government have taken differing stances on GHG regulation and baldly asserts that that "the federal government and NAM have for a long time operated on the same side of this issue." Pls.' Opp. at 8. The reality, however, is that the NAM and the Federal Defendants often do not see eye to eye on issues regarding the regulation of GHG emissions that is at the heart of this case. In fact, the NAM has frequently expressed concern regarding aspects of the government's approach to regulating GHG emissions through agency notice and comment rulemaking opportunities and, when necessary to protect its members' interests, has challenged the government's GHG regulations in court. NAM Motion at 11; Moutray Decl. ¶¶ 25-26. Indeed, the NAM's relationship with the government on aspects of GHG regulation, which is far more at odds than aligned, closely resembles that of the intervenors in a case cited by Plaintiffs, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, where the Ninth Circuit found that the intervenors were not adequately represented by the United States Forest Service. 647 F.3d 893, 899-900 (9th Cir. 2011). Moreover, the occasional overlap in interests between the NAM and the government does not alter the fact that, as representatives of the general public interest, the government has broad interests that cannot uniformly align with the narrow, focused interests of organizations such as the NAM. NAM Motion at 11.

Further, the NAM offers more than mere speculation that its divergent interests will cause it to make arguments that the government is unwilling or unable to make. *See Freedom from Religion Found.*, 644 F.3d at 841-42 (putative intervenor merely speculating about positions the government *might* take in the future); *Arakaki*, 324 F.3d at 1087 (finding no potential for divergence of interest when defendants stated they would make "*all* arguments necessary" to support putative intervenors' objectives (emphasis added)). While Plaintiffs point to broad similarities in the motions to dismiss, Pls.' Opp. at 8-9, they ignore entirely the substantial differences between the NAM's and the government's responses to Plaintiffs' PI Motion. *See Lockyer*, 450 F.3d at 444 (finding inadequate representation when government had already taken a position contrary to that of putative intervenor). In its PI Opposition, the NAM argued that Plaintiffs have not met any of the four prongs of the

**REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE - CASE NO. 3:11-CV-02203-EMC**

preliminary injunction standard (Dkt. #81), while the government only addressed Plaintiffs' likelihood of success on the merits (Dkt. #71).  The NAM's brief offered vital information, with accompanying expert testimony, on why Plaintiffs will not suffer irreparable harm between now and when the case could be heard on the merits, why the balance of harms weighs against their requested relief, and why the public interest also favors the denial of their requested relief.  NAM's Opp. to Pls.' PI Motion (Dkt. #81).  The government did not address those prongs of the preliminary injunction standard in any detail—and, in fact, the Plaintiffs now claim in their reply to the government's PI Opposition that the government has waived any arguments on those prongs. Pls.' Reply in Support of PI Motion (Dkt. #100) at 2-3. Thus there is simply no basis for asserting that the government will *undoubtedly* make all of the NAM's arguments throughout this case when it has already failed to do so on these important matters.  This demonstrates not only that the NAM is not adequately represented by the government, but also that the NAM's participation will help the Court address the full weight of evidence related to the issues raised, if this case were to reach the merits.

## II.   In The Alternative, The NAM Should Be Granted Leave For Permissive Intervention Under Federal Rule Of Civil Procedure 24(b)

In the alternative, the NAM meets the standard for permissive intervention because its defenses will raise questions of law and fact in common with those raised in the main action between Plaintiffs and Defendants.  As described above, the NAM's members' economic and legal interests in their existing business operations as well as in helping to shape federal GHG policy are directly at stake in this suit.  Plaintiffs, by alleging a novel federal common law obligation and requesting extraordinary remedial action, seek to impose significant burdens on the NAM's members and to effectively exclude them from participation in the development of federal GHG regulations.  The NAM has and will continue to raise common questions of law and fact regarding the government's obligation to regulate GHG emissions and its role in helping to shape the content of any regulations that are proposed.

Further, Plaintiffs' suggestion that participation by the NAM in this case will unduly delay and complicate the case is unwarranted.[3]  The NAM already stated that it will comply with all

---

[3] Permitting the NAM to intervene obviously does obligate the Court to allow additional parties to

9

**REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE - CASE NO. 3:11-CV-02203-EMC**

forthcoming scheduling orders, and will endeavor to avoid duplication of issues with the other parties as it has done so to date. NAM Motion at 7. The NAM has strived to present significant information to the Court that the government did not address to assist the Court in understanding the full scope of issues raised by Plaintiffs. Thus, there is no danger of material prejudice to the parties in this case. Further, as discussed in the NAM's Opposition to Plaintiffs' Motion to Strike (Dkt. # 99), the NAM has already worked diligently to file documents, including its PI Opposition, promptly so that Plaintiffs are not prejudiced, despite the fact that the NAM was not bound by the existing briefing schedules.

Finally, as discussed above, Plaintiffs' argument that it is improper for a private party to be a defendant in an action when obligations run solely to the federal government has been directly rejected by the *en banc* Ninth Circuit in *Wilderness Society*, which in turn recognized the rejection of similar arguments in nearly every federal circuit to consider them. *Wilderness Soc'y*, 630 F.3d at 1178-80. Therefore, it is irrelevant for purposes of intervention that the NAM could not be found liable under the Public Trust Doctrine. *Id.* Instead the generally applicable "liberal" jurisprudence for intervention under Rule 24 should apply. *Id.* at 1180.

### III. Limiting The NAM's Participation In This Case Is Not Appropriate, Given The Potential Impacts Of This Case On The NAM And Its Members

Plaintiffs suggest that this Court should limit the NAM's participation in this case to either participating in the remedial phase or as an *amicus*. Pls.' Opp. at 12. For all of the reasons discussed above, it would inappropriate for the Court to artificially limit the NAM's participation. The remedy Plaintiffs seek undeniably would significantly harm the NAM's protectable interests and those of its members and therefore the NAM is entitled to *fully* participate in this case. Further, Plaintiffs' suggestion that the NAM only be allowed to participate in the remedial phase of the case is absurd, given that Plaintiffs have already tried to jump to the remedial phase of this case by filing a comprehensive Motion for a Preliminary Injunction. Thus, the NAM should be allowed to fully and immediately participate in this case.

---

intervene. *See Arakaki*, 324 F.3d at 1087; *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the NAM respectfully requests that the Court grant its motion for leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a) with respect to all of Plaintiffs' claims. In the alternative, the NAM requests that it be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b) with respect to all of Plaintiffs' claims.

Dated:  November 21, 2011                         Respectfully submitted,

                                                           SIDLEY AUSTIN LLP


                                                           By: <u>Ragu-Jara Gregg</u>

                                                              Attorneys for Proposed Intervenor-Defendant
                                                              The National Association of Manufacturers