## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALEC L., *et al.*,

      Plaintiffs,

    v.

LISA P. JACKSON, *et al.*,

      Defendants,

and

NATIONAL ASSOCIATION OF
MANUFACTURERS, *et al.*

      Intervenors.

Civil Action No. 1:11-cv-02235 (RLW)

## MEMORANDUM OPINION

Five young citizens and two organizations, Kids vs. Global Warming[1] and Wildearth Guardians[2], bring this action seeking declaratory and injunctive relief for Defendants' alleged failure to reduce greenhouse gas emissions. The Plaintiffs allege that Defendants have violated their fiduciary duties to preserve and protect the atmosphere as a commonly shared public trust resource under the public trust doctrine. Plaintiffs' one-count complaint does not allege that the defendants violated any specific federal law or constitutional provision, but instead alleges violations of the federal public trust doctrine.

---

[1]    Kids vs Global Warming is a non-profit organization whose membership includes thousands of youth from around the country "who are concerned about how human-made climate change is affecting and will continue to affect them and their future." (Am. Compl. at ¶ 48). Kids vs Global Warming has brought this action on behalf of its members. <u>Id.</u>

[2]    Wildearth Guardians is a non-profit conservation organization that is dedicated to "protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding Earth's climate and air quality." (Am. Compl. at ¶ 49). Wildearth Guardians has brought this action on its own behalf and on behalf of its adversely affected members. <u>Id.</u>

Plaintiffs bring this suit against Lisa P. Jackson in her official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), Kenneth L. Salazar in his official capacity as Secretary of the U.S. Department of the Interior, Thomas J. Vilsack in his official capacity as Secretary of the U.S. Department of Agriculture, Gary F. Locke in his official capacity as Secretary of the U.S. Department of Commerce, Steven Chu in his official capacity as Secretary of the U.S. Department of Energy, and Leon E. Panetta in his official capacity as Secretary of the U.S. Department of Defense.  Plaintiffs allege that each of the Defendants, as agencies and officers of the federal government, "have wasted and failed to preserve and protect the atmosphere Public Trust asset."  (Am. Compl. ¶¶ 138, 146).  Two parties claiming an interest in this action have intervened.[3]

This matter is before the Court on Defendants' and the Defendant-Intervenors' Motions to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants and Defendant-Intervenors move for dismissal arguing, *inter alia*, that because Plaintiffs' lone claim is grounded in state common law, the complaint does not raise a federal question to invoke this Court's jurisdiction and, therefore, warrants dismissal on jurisdictional grounds.   Having considered the full briefing on these motions, and for the reasons set forth below, Defendants and Defendant-Intervenors' motions are granted and Plaintiffs' Amended Complaint is dismissed with prejudice.

---

[3]     Two groups have been allowed to intervene in this action:  The National Association of Manufacturers, who represents small and large manufacturers in industrial sectors around the country; and several California companies and trade associations who own and operate, or whose members own and operate, numerous vehicles, engines and equipment that emit greenhouse gases into the atmosphere.  Both groups claim that the relief requested by Plaintiffs would adversely affect them and their constituents and were permitted to intervene pursuant to Fed. R. Civ. P. 24(a).

### I.  BACKGROUND

#### A.  Public Trust Doctrine

The public trust doctrine can be traced back to Roman civil law, but its principles are grounded in English common law on public navigation and fishing rights over tidal lands.  PLL Montana, LLC v. Montana, 565 U.S. ----, 132 S. Ct. 1213, 1234 (2012).  "At common law, the title and dominion in lands flowed by the tide water were in the King for the benefit of the nation . . . Upon the American Revolution, these rights, charged with a like trust, were vested in the original States within their respective borders." Phillips Petroleum v. Mississippi, 484 U.S. 469, 473 (1988) (quoting Shively v. Bowlby, 152 U.S. 1 (1894)).  Upon entry into the Union, the states received ownership of all lands under waters subject to the ebb and flow of the tide.  Id. at 476.  The states' right to use or dispose of such lands, however, is limited to the extent that it would cause "substantial impairment of the interest of the public in the waters," and the states' right to the water is subject to "the paramount right of [C]ongress to control their navigation so far as may be necessary for the regulation of commerce with foreign nations and among the states." Ill. Cent. R.R. Co. v. Illinois, 146 U.S. 387, 435 (1892).  Thus, traditionally, the doctrine has functioned as a restraint on the states' ability to alienate submerged lands in favor of public access to and enjoyment of the waters above those lands.

More recently, courts have applied the public trust doctrine in a variety of contexts.  See e.g. District of Columbia v. Air Florida, Inc. 750 F.2d 1077, 1083 (D.C. Cir. 1984) (noting that "the doctrine has been expanded to protect additional water-related uses such as swimming and similar recreation, aesthetic enjoyment of rivers and lakes, and preservation of flora and fauna

indigenous to public trust lands.").[4]  And while Plaintiffs have cited authority for the application

of the doctrine in numerous natural resources, including "groundwater, wetlands, dry sand

beaches, non-navigable tributaries, and wildlife" (Pls.' Opp. at 17-18), they have cited no cases,

and the Court is aware of none, that have expanded the doctrine to protect the atmosphere or

impose duties on the federal government.  Therefore, the manner in which Plaintiffs seek to have

the public trust doctrine applied in this case represents a significant departure from the doctrine

as it has been traditionally applied.

### B.  The Relief Requested by Plaintiffs

Plaintiffs seek a variety of declaratory and injunctive relief for their public trust claim.[5]

First, Plaintiffs ask the Court to declare that the atmosphere is a public trust resource and that the

United States government, as a trustee, has a fiduciary duty to refrain from taking actions that

waste or damage this asset.  Plaintiffs also ask the Court to declare that, to date, Defendants have

violated their fiduciary duties by contributing to and allowing unsafe amounts of greenhouse gas

emissions into the atmosphere. In addition, Plaintiffs ask the Court to further define Defendants'

fiduciary duties under the public trust by declaring that the six Defendant federal agencies have a

duty to reduce global atmospheric carbon dioxide levels to less than 350 parts per million during

this century.

---

[4]     Some states have recognized the doctrine as imposing an affirmative duty on the state.
See e.g. National Audubon Soc'y v. Superior Court of Alpine Cnty., 33 Cal.3d 419, 441, 189
Cal.Rptr. 346, 360-61, 658 P.2d 709, 725 (1983) (noting that the public trust doctrine "is an
affirmation of the duty of the state to protect the people's common heritage of streams, lakes,
marshlands and tidelands . . . ").

[5]     Based upon the scope of the relief requested by Plaintiffs, Defendants have raised
separation of powers and political question doctrine defenses.  These defenses are clearly
implicated by the totality of the relief sought by the Plaintiffs.  However, to the extent that
the Court, in its equitable discretion, may fashion a less expansive remedy, these doctrines would not
be implicated. Therefore, the Court rules on alternative grounds.

With respect to injunctive relief, Plaintiffs have asked this Court to issue an injunction directing the six federal agencies to take all necessary actions to enable carbon dioxide emissions to peak by December 2012 and decline by at least six percent per year beginning in 2013. Plaintiffs also ask the Court to order Defendants to submit for this Court's approval: annual reports setting forth an accounting of greenhouse gas emissions originated by the United States and its citizens; annual carbon budgets that are consistent with the goal of capping carbon dioxide emissions and reducing emissions by six percent per year; and a climate recovery plan to achieve Plaintiffs' carbon dioxide emission reduction goals.[6]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, with the ability to hear only the cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Hunter v. District of Columbia, 384 F. Supp. 2d 257, 259 (D.D.C. 2005). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction. See Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on the basis of the complaint alone, or it may consider materials beyond the pleadings "as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Board of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Lopez v. Council on American–Islamic Relations Action Network, Inc., 741 F. Supp. 2d 222, 231 (D.D.C. 2010).

---

[6]     Plaintiffs also request that the Court retain jurisdiction over the action to ensure Defendants' compliance with the injunctive relief requested.

When determining whether a district court has federal question jurisdiction pursuant to Article III and 28 U.S.C. § 1331, the jurisdictional inquiry "depends entirely upon the allegations in the complaint" and asks whether the claim as stated in the complaint "arises under the Constitution or laws of the United States." Carlson v. Principal Fin. Group, 320 F.3d 301, 306 (2d Cir. 2003); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). If a federal claim has been alleged, the district court has subject matter jurisdiction unless the purported federal claim is clearly "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." Carlson, 320 F.3d at 306 (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946).

## II. ANALYSIS

Plaintiffs assert that this Court has jurisdiction to review this case under the federal question statute, 28 U.S.C. § 1331, because the public trust doctrine arises from federal law. Defendants contend that the public trust doctrine does not provide a federal cause of action and, therefore, this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claim.  Thus, the key question here is whether Plaintiffs' public trust claim is a creature of state or federal common law.

The central premise upon which Plaintiffs rely to invoke the Court's jurisdiction is misplaced.  Plaintiffs contend that the public trust doctrine presents a federal question because it "is not in any way exclusively a state law doctrine."  (Pl.'s Opp. at 13).  The Supreme Court's recent decision in PLL Montana, LLC v. Montana, appears to have foreclosed this argument. PLL Montana, LLC v. Montana, 565 U.S. ----, 132 S. Ct. 1213, 1235 (2012).  In that case, the Court while distinguishing the public trust doctrine from the equal footing doctrine, stated that "the public trust doctrine *remains a matter of state law*" and its "contours . . . *do not depend upon*

*the Constitution*."   Id. at 1235 (emphasis added).   The Court went on to state that the public trust doctrine, as a matter of state law, was "subject as well to the federal power to regulate vessels and navigation under the Commerce Clause and admiralty power."   Id.

The parties disagree as to whether the Supreme Court's declaration regarding the public trust doctrine is part of the holding or, as Plaintiffs urge, merely dictum.   The Court, however, need not resolve this issue because "'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.'"   Overby v. Nat'l Ass'n of Letter Carriers, 595 F.3d 1290, 1295 (D.C. Cir. 2010) (quoting United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir. 2006).   Thus, dicta or not, the Court's statements regarding the public trust doctrine would nonetheless be binding on this Court.

Even if the Supreme Court's declaration was not binding, the Court finds it persuasive. Likewise, dictum from this Circuit is also persuasive.   The D.C. Circuit has had occasion to state, albeit in dictum, that "[i]n this country the public trust doctrine has developed *almost exclusively as a matter of state law*" and that "the doctrine has functioned as a constraint on states' ability to alienate public trust lands."   District of Columbia v. Air Florida, Inc. 750 F.2d 1077, 1082 (D.C. Cir. 1984) (emphasis added).   The Court also expressed its concerns that a *federal* common-law public trust doctrine would possibly be displaced by federal statutes.   Id. at 1085 n.43.

Thus, it appears that Plaintiffs have not raised a federal question to invoke this Court's jurisdiction under § 1331.[7]   As Plaintiffs' complaint alleges no other federal cause of action to

---

[7]     Where no federal question is pleaded, the federal court may nevertheless have diversity jurisdiction.  However, the Court lacks diversity jurisdiction in this case, as "[i]t is well established . . . that the United States is not a citizen for diversity purposes and that 'U.S. agencies cannot be sued in diversity.'"   Commercial Union Ins. v. U.S., 999 F.2d 581, 584 (D.C. Cir. 1993) (quoting General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 703 (7th Cir. 1991)).

invoke this Court's original jurisdiction, there is no basis to exercise the Court's supplemental jurisdiction over Plaintiffs' state-law common law claim under 28 U.S.C. § 1367.

Alternatively, even if the public trust doctrine had been a federal common law claim at one time, it has subsequently been displaced by federal regulation, specifically the Clean Air Act. In American Electric Power Company v. Connecticut, the Supreme Court held that: "the Clean Air Act and the EPA actions it authorizes displace *any* federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants." Amer. Elec. Power Co. v. Connecticut, 131 S. Ct. 2527, 2537 (2011) (emphasis added).

The Plaintiffs attempt to escape the holding in the Amer. Elec. Power Co. by arguing that its holding should be limited to common law nuisance claims, while Plaintiffs are proceeding here under a common law public trust theory.  Plaintiffs also attempt to distinguish the Amer. Elec. Power Co. case because that case was brought against four private companies and the Tennessee Valley Authority, a federally owned corporation, as opposed to the federal agency defendants in this case.  Plaintiffs argue that this distinction is significant because, in Plaintiffs' view, the fiduciary duties of the public trust doctrine can only be imposed on the states and the federal government. According to Plaintiffs, because the plaintiffs in the Amer. Elec. Power Co. case could not bring a public trust claim against the defendants in that case, the holding in that case should be limited to those facts.

The Court views these as distinctions without a difference.  The particular contours of the public nuisance doctrine did not in any way affect the Supreme Court's analysis in Amer. Elec. Power Co..  Indeed, the Court's holding makes no mention of the public nuisance doctrine at all, as the Court clearly stated that *any* federal common law right was displaced.  Id.  Further, there is nothing in the Court's holding to indicate that it should be limited to suits against private entities.

Indeed, the Court described in great detail the process under which federal courts may review the action, or inaction, of federal agencies with respect to their statutory obligations under the Clean Air Act.  Id. at 2539.

Moreover, the question at issue in the Amer. Elec. Power Co. case is not appreciably different from the question presented here—whether a federal court may make determinations regarding to what extent carbon-dioxide emissions should be reduced, and thereafter order federal agencies to effectuate a policy of its own making.  The Amer. Elec. Power. Co. opinion expressed concern that the plaintiffs in that case were seeking to have federal courts, in the first instance, determine what amount of carbon-dioxide emissions is unreasonable and what level of reduction is practical, feasible and economically viable.  Amer. Elec. Power Co., 436 U.S. at 2540.  The Court explained that "the judgments the plaintiffs would commit to federal judges . . . cannot be reconciled with the decisionmaking scheme Congress enacted."  Id.  The Court further explained that Congress designated the EPA as an agency expert to "serve as primary regulator of greenhouse gas emissions" and that this expert agency "is surely better equipped to do the job than individual district judges issuing ad hoc, case-by-case injunctions."  Id. at 2539.  The Court, in holding that the federal common law cause of action was displaced by the Clean Air Act, concluded that federal judges may not set limits on greenhouse gas emissions "in the face of a law empowering EPA to set the same limits, subject to judicial review only to ensure against action arbitrary, capricious, . . . or otherwise not in accordance with the law."  Id.

In the present case, Plaintiffs are asking the Court to make similar determinations regarding carbon dioxide emissions.  First, in order to find that there is a violation of the public trust—at least as the Plaintiffs have pled it—the Court must make an initial determination that current levels of carbon dioxide are too high and, therefore, the federal defendants have violated

their fiduciary duties under the public trust.  Then, the Court must make specific determinations as to the appropriate level of atmospheric carbon dioxide, as determine whether the climate recovery plan sought as relief will effectively attain that goal.  Finally, the Court must not only retain jurisdiction of the matter, but also review and approve the Defendants' proposals for reducing greenhouse gas emissions.  Ultimately, Plaintiffs are effectively seeking to have the Court mandate that federal agencies undertake specific regulatory activity, even if such regulatory activity is not required by any statute enacted by Congress.

These are determinations that are best left to the federal agencies that are better equipped, and that have a Congressional mandate, to serve as the "primary regulator of greenhouse gas emissions."  Id. at 2539.  The emissions of greenhouse gases, and specifically carbon dioxide, are subject to regulation under the Clean Air Act.  Massachusetts v. E.P.A., 549 U.S. 497, 528-29 (2007).  Thus, a federal common law claim directed to the reduction or regulation of carbon dioxide emissions is displaced by the Act.  Id. at 2537 (noting that the test for legislative displacement is whether the statute "speaks directly to the question at issue").  Therefore, even if Plaintiffs allege a public trust claim that could be construed as sounding in federal common law, the Court finds that that cause of action is displaced by the Clean Air Act.

## IV.     CONCLUSION

Ultimately, this case is about the fundamental nature of our government and our constitutional system, just as much – if not more so – than it is about emissions, the atmosphere or the climate.  Throughout history, the federal courts have served a role both essential and consequential in our form of government by resolving disputes that individual citizens and their elected representatives could not resolve without intervention.  And in doing so, federal courts have occasionally been called upon to craft remedies that were seen by some as drastic to redress

those seemingly insoluble disputes.  But that reality does not mean that every dispute is one for the federal courts to resolve, nor does it mean that a sweeping court-imposed remedy is the appropriate medicine for every intractable problem.  While the issues presented in this case are not ones that this Court can resolve by way of this lawsuit, that circumstance does not mean that the parties involved in this litigation – the plaintiffs, the Defendant federal agencies and the Defendant-Intervenors – have to stop talking to each other once this Order hits the docket.  All of the parties seem to agree that protecting and preserving the environment is a more than laudable goal, and the Court urges everyone involved to seek (and perhaps even seize) as much common ground as courage, goodwill and wisdom might allow to be discovered.

For the foregoing reasons, the Defendants' and Defendant-Intervenors' motions to dismiss are granted.  The Plaintiffs' First Amended Complaint is hereby dismissed.

SO ORDERED.[8]

Date:  May 31, 2012

_____
ROBERT L. WILKINS
United States District Judge

---

[8]      An order will be issued contemporaneously with this memorandum opinion granting the Defendants' and Defendant-Intervenors' motions to dismiss Plaintiffs' Amended Complaint.