SUMMARY MEMORANDUM OPINION; NOT FOR PUBLICATION
IN THE OFFICIAL REPORTERS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ALEC L.**, *et al.*,

        Plaintiffs,

        v.

**BOB PERCIASEPE**, *et al.*,

        Defendants,

  and

**NATIONAL ASSOCIATION OF MANUFACTURERS**, *et al.*,

        Intervenors.

Civil Action No. 11-cv-2235 (RLW)

## **MEMORANDUM OPINION**[1]

    The Plaintiffs in this lawsuit—five teenage citizens and two non-profit organizations, "Kids vs. Global Warming" and "WildEarth Guardians"—brought this action seeking declaratory and injunctive relief based on the defendants' alleged failure to reduce greenhouse gas emissions. Plaintiffs advanced a novel theory in support of the relief they sought, arguing that each of the defendants, as the heads of various federal agencies and as officers of the federal

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or, alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf.* FED. R. APP. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

government, violated their supposed fiduciary obligations "to protect the atmosphere" under the so-called federal public trust doctrine.[2] (Am. Compl. at ¶ 18; *see id.* at ¶¶ 136-153). On May 31, 2012, the Court dismissed this case with prejudice, concluding that Plaintiffs failed to establish a basis for federal jurisdiction because the public trust doctrine, upon which their claims hinged, is a creature of state common law and not federal law. *See Alec L. v. Jackson*, 863 F. Supp. 2d 11, 15-17 (D.D.C. 2012). In so holding, the Court relied substantially on the U.S. Supreme Court's then-recent decision in *PPL Montana, LLC v. Montana*, wherein Justice Kennedy, writing for a unanimous Court, explained that "the public trust doctrine remains a matter of state law" and that its "contours . . . do not depend upon the Constitution." *See id.* at 15 (quoting *PPL Montana*, --- U.S. ----, 132 S. Ct. 1215, 1235 (2012)). This Court also explained that, even if the public trust doctrine had been grounded in federal common law at some point in time, Congress plainly displaced any such doctrine, at least in this context, through its passage of the comprehensive and field-occupying Clean Air Act. *Id.* at 15-16 (quoting *Am. Elec. Power Co. v. Connecticut*, --

---

[2]    Specifically, Plaintiffs sued: (1) Lisa P. Jackson in her official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), (2) Kenneth L. Salazar in his official capacity as Secretary of the Interior, (3) Thomas J. Vilsack in his official capacity as Secretary of Agriculture, (4) Gary L. Locke in his official capacity as Secretary of Commerce, (5) Steven Chu in his official capacity as Secretary of Energy, and (6) Leon Panetta in his official capacity as Secretary of Defense. (*See generally* Am. Compl.). By operation of law, however, the following individuals have been automatically substituted as defendants in this action pursuant to Federal Rule of Civil Procedure 25(d): Bob Perciasepe as Acting Administrator of the EPA, Sally Jewell as Secretary of the Interior, Rebecca Blank as Acting Secretary of Commerce, Ernest Moniz as Secretary of Energy, and Chuck Hagel as Secretary of Defense. *See* FED. R. CIV. P. 25(d). As Secretary Vilsack remains in office, he remains a defendant in this action. The Court collectively refers to these defendants as the "Federal Defendants."

The Court also allowed two groups to intervene in this action: the National Association of Manufacturers ("NAM"), as well as a collection of several California companies and trade associations. The California entities, all of which owned and operated (or had members who owned and operated) vehicles and/or equipment that emitted greenhouse gases into the atmosphere, included: California Dump Truck Owners Association, Dalton Trucking, Inc., Delta Construction Company, Inc., Southern California Contractors Association, Inc., and United Contractors f/k/a Engineering Utility Contractors Association (the "CA Intervenors").

- U.S. ----, 131 S. Ct. 2527, 2537 (2011)). Consequently, following full briefing and lengthy argument from the parties during a three-hour hearing, the Court ultimately concluded that it lacked jurisdiction over Plaintiffs' claims and dismissed this action as a result.

Plaintiffs now seek reconsideration of the Court's decision pursuant to Federal Rule of Civil Procedure 59(e). (Dkt. No. 175 ("Pls.' Mem.")). Through this motion, Plaintiffs press three arguments that they insist warrant the extraordinary relief they seek: (1) that the Court failed to provide Plaintiffs with a sufficient opportunity to address the Supreme Court's decision in *PPL Montana*; (2) that the Court wrongly found that Plaintiffs' complaint "[did] not allege that the defendants violated any specific federal law or constitutional provision"; and (3) that the Court improperly construed and applied the Supreme Court's decision in *American Electric Power Co.* (*Id.*). Defendants and Intervenors oppose Plaintiffs' motion for reconsideration, rejoining that "Plaintiffs' response to the Court's decision—a Rule 59(e) motion rearguing their flawed legal theories and attempting to raise new ones—must be rejected." (Dkt. No. 177 ("Fed. Defs.' Opp'n") at 2; *see also* Dkt. No. 178 ("Intervenors' Opp'n")). The Court concurs.

Therefore, upon review of Plaintiffs' motion and the parties' respective briefing, along with the entire record in this action, the Court concludes that Plaintiffs' Motion for Reconsideration must be **DENIED** for the reasons set forth herein.

## ANALYSIS

### A. Standard of Review

Motions to alter or amend under Rule 59(e) are disfavored, "and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998)). As our Circuit has explained, a Rule 59(e) motion "need

3

not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Consequently, "a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993). Nor is a Rule 59 motion a means by which to "reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or "a chance . . . to correct poor strategic choices," *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 15 (D.D.C. 2010).

### B. Plaintiffs Establish No Entitlement To Relief Under Rule 59(e)

As summarized above, Plaintiffs advance three arguments in seeking reconsideration under Rule 59(e). Notably, however, Plaintiffs do not point to any intervening change in law, or any newly-discovered evidence, that they contend compels a different result. Instead, Plaintiffs strictly argue that the Court committed several "clear errors" in its prior analysis. In so arguing, however, Plaintiffs either repackage arguments the Court already considered and rejected, or they attempt to mount new attacks that they could and should have raised previously.

*First*, Plaintiffs insist they are entitled to relief because they were not afforded the opportunity to address the Supreme Court's decision in *PPL Montana*. They argue that "[t]he fact that this Court based its decision to dismiss Plaintiffs' claims on the very case the Court refused to let Plaintiffs brief constitutes a manifest injustice." (Dkt. No. 175 at 28). This line of argument is wholly unconvincing, and, in suggesting that they were denied a chance to brief or otherwise address the impact of *PPL Montana* on their claims, Plaintiffs distort the procedural history of this case. While true that the Court denied Plaintiffs' request to submit additional

4

briefing in response to the Amicus Brief of Law Professors, (*see* Dkt. No. 165), that hardly served as their one and only opportunity to address *PPL Montana*. The Supreme Court handed down its decision in that case on February 22, 2012. Several weeks later—as Plaintiffs themselves point out—the Court held a telephonic status conference on March 5, 2012, and asked the parties whether they felt the need to submit any supplemental briefing on the Federal Defendants' or NAM's motions to dismiss, which were both fully-briefed before the case was transferred to the undersigned from the Northern District of California. While Plaintiffs now fault Defendants and Intervenors for not mentioning *PPL Montana* during that status conference, Plaintiffs fail to recognize that they bypassed the same opportunity and did not ask to submit any additional briefing themselves; to the extent they felt the need to distinguish a newly-issued Supreme Court decision dealing with the public trust doctrine, Plaintiffs could and should have sought to do so at that time. Thereafter, Plaintiffs squandered another opportunity to brief their views on *PPL Montana* in opposing the Delta Intervenors' dismissal motion on April 16, 2012. (*See* Dkt. No. 160). The *PPL Montana* decision was nearly two months old at that point, and Plaintiffs indisputably could have addressed the case and argued that—at least in their view—it had no bearing on this matter. But they failed to discuss or even mention *PPL Montana* in their briefing altogether. Accordingly, Plaintiffs' suggestion that "the first opportunity [they] had to address *PPL Montana*" was through their proposed brief on May 2, 2012, (*see* Dkt. No. 175 at 3), is disingenuous and lacks merit.[3]

---

[3] Of course, along with the Supreme Court's discussion in *PPL Montana*, the Court's conclusion that the public trust doctrine sounds in state, and not federal, law was also based upon persuasive dicta from the D.C. Circuit in *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D.C. Cir. 1984), wherein the Court of Appeals explained that "the public trust doctrine has developed *almost exclusively as a matter of state law*," and expressed concerns that a federal common-law public trust doctrine would be displaced by federal legislation. *Id.* at 1082, 1085, n.43 (emphasis added). Plaintiffs cannot credibly complain that they had no opportunity to

Furthermore, and perhaps more significantly, Plaintiffs also had ample opportunity to present their arguments regarding *PPL Montana* during the Court's three-hour hearing on May 11, 2012, and Plaintiffs took full advantage of that opportunity, making many of the same arguments to the Court that they attempt to re-litigate now—i.e., that the *PPL Montana* Court did not characterize the public trust doctrine as a purely state-law issue, and that the discussion regarding the public trust doctrine therein was dicta in any event. (*See generally* Dkt. 171 ("5/11/12 Transcript")). This fact alone undercuts the notion that Plaintiffs were somehow stymied from responding to or otherwise addressing Defendants and Intervenors' arguments regarding *PPL Montana*. *Cf. Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1331-32 (Fed. Cir. 2008) (finding no abuse of discretion in denial of motion to strike reply brief that assertedly contained new arguments and evidence, where "it [was] clear that the court gave [defendant] an opportunity to present its rebuttal arguments to [the plaintiff's] new evidence orally" during the subsequent hearing); *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 645 n.21 (D.N.J. 2004) ("In citing [new authority] in a Reply Brief to support a position clearly taken in the Moving Brief . . . the Moving Defendants did not make a newly minted argument, but rather merely explained a position in the initial brief that the respondent had refuted. Furthermore, because oral argument was heard on this motion, Plaintiff had sufficient opportunity to respond . . . ."). Therefore, as shown, Plaintiffs clearly had many opportunities to present their views on *PPL Montana* and to respond to any arguments to the contrary, and the Court already considered Plaintiffs' arguments and found them unconvincing. As such, their

---

address the *Air Florida* case, given that their earlier briefing expressly urged this Court to discount the D.C. Circuit's statements as dicta. (*See, e.g.*, Dkt. No. 106 at 5).

contention that the Court committed "clear error" in denying their request to submit additional briefing on *PPL Montana* is thus unavailing and does not warrant relief under Rule 59(e).[4]

*Second*, Plaintiffs argue that the Court "committed clear legal error by summarily discounting [their] constitutional claims." (Pls.' Mem. at 15). They assert that the so-called federal public trust doctrine is "constitutionally enshrined" and "embodied in the sovereign's reserved powers, as well as the due process, equal protection, and commerce clauses of the Constitution." (*Id.* at 12-13). But throughout their briefing in this case, Plaintiffs staunchly maintained that the public trust doctrine, in and of itself, provided the basis for federal jurisdiction. (*See* Dkt. No. 106 ("Pls.' Opp'n to Fed. Defs.' Mtn.") at 2-7; Dkt. No. 160 ("Pls.' Opp'n to CA Intervenors' Mtn.") at 12-22). More specifically, Plaintiffs previously made clear that their "claim in this case is *based solely on the Public Trust Doctrine*, which exists independent of statutes, finding its foundation in an inherent and inalienable attribute of sovereignty and imposing a fiduciary obligation on the trustee that cannot be abdicated." (Pls.' Opp'n to CA Intervenors' Mtn. at 20) (emphasis added). Now, however, Plaintiffs appear to be arguing that, through their alleged violations of their so-called federal public trust obligations, the Federal Defendants committed freestanding, independent violations of the Constitution under the Due Process Clause, the Equal Protection Clause, and the Commerce Clause. (*Id.* at 15-24). According to Plaintiffs, they were deprived of an opportunity to fully brief these theories before

---

[4]   It also bears noting that, since this Court handed down its decision and dismissed Plaintiffs' action, at least two other courts have similarly interpreted the *PPL Montana* Court's discussion of the public trust doctrine as affirmation that the doctrine is one of state law, and not federal law. *See United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1038 (9th Cir. 2012) ("'[T]he public trust doctrine remains a matter of state law,' the contours of which are determined by the states, not by the United States Constitution."); *Brigham Oil & Gas, L.P. v. N.D. Bd. of Univ. & Sch. Lands*, 866 F. Supp. 2d 1082, 1088 (D.N.D. 2012) ("The United States Supreme Court recently made clear that the public trust doctrine is a matter of state law.").

the Court dismissed their case, and they insist that they are entitled to Rule 59(e) relief as a result. The Court disagrees.

To be sure, Plaintiffs had plenty of chances to clearly delineate the nature and extent of their claims—both through the many rounds of briefing and during the three-hour hearing the Court held on the various motions to dismiss. While Plaintiffs suggest that the constitutional aspects of their claims were never raised or fleshed out during the briefing process, this assertion is belied by the record. At a minimum, as NAM points out, these issues were squarely teed up through its motion to dismiss, wherein NAM argued as follows:

> Plaintiffs do not and cannot claim any violations of the constitutional provisions they cite in their complaint other than through the asserted violations of the public trust doctrine. The Commerce Clause is a grant of power authorizing Congress to regulate, not a requirement that Congress enact particular regulations. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005). The Fourteenth Amendment "applies only to the states," not to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). The Due Process clause is a limitation on the government's power to act, and does not impose affirmative duties. *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) (language of the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm.").

(*See* Dkt. No. 67 ("NAM Mtn.") at 17 n.9). Indeed, NAM made these arguments before Plaintiffs filed any briefing whatsoever on the various motions to dismiss. So even setting aside the fact that Plaintiffs could and should have clearly spelled out the contours of their claims independently, to the extent they sought to assert constitutional claims, Plaintiffs certainly had an obligation to respond to these direct arguments—i.e., that the conclusory constitutional references in their Amended Complaint did not provide an independent jurisdictional hook for this action. Plaintiffs failed to do so. And to the extent that Plaintiffs now wish they had briefed these issues differently, or otherwise presented their arguments more directly, they cannot take refuge under Rule 59(e).

In addition, Plaintiffs' present argument on this point runs completely counter to their position during the hearing, when counsel confirmed—in response to direct questioning from the Court on this precise issue—that Plaintiffs were not alleging any specific constitutional violations through their claims:

> THE COURT: All right. Here you're saying that there's no constitutional violation that's found first, though. Right?
>
> MS. OLSON: We argue that the Public Trust Doctrine is—because it's an attribute of sovereignty and it vested when the federal government was created, that it is constitutionally embedded in the vesting clauses that give the legislature and the executive branch authority over national interests.
>
> THE COURT: I understand that. But you're not saying that somehow what the federal government is doing is unconstitutional, are you?
>
> MS. OLSON: We argue that—
>
> THE COURT: Why didn't you bring a Section 1983 claim or a *Bivens* claim or whatever?
>
> MS. OLSON: Yes, Your Honor, we argue that they are violating their fundamental duties as trustees of the federal Public Trust resources. That is the claim. So it's not brought under a Section 1983 claim, that's correct.
>
> THE COURT: So yes or no, are you arguing that there's a constitutional violation or not?
>
> MS. OLSON: Not in the sense that you're speaking of, Your Honor.

(5/11/12 Transcript at 65:15-66:12). Thus, at best, Plaintiffs failed to cleanly present these arguments when they had the chance. At worst, in doubling back on their theory, Plaintiffs are completely contradicting their prior representations to the Court.[5] But in either event, Plaintiffs are not entitled to relief under Rule 59(e).

---

[5] Indeed, another exchange with Plaintiffs' counsel confirms that Plaintiffs are now pressing an entirely different theory than they argued previously. In an effort to ascertain Plaintiffs' basis for invoking federal question jurisdiction under 28 U.S.C. § 1331, the Court asked counsel during the hearing to identify the specific law or laws of the United States upon which their claims were premised:

> THE COURT: If I were to find that [your claim] arose under the laws of the United States, under what laws would I look to to find that it arises under?

*Third*, Plaintiffs argue that the Court misinterpreted and misapplied the Supreme Court's decision in *American Electric Power Co. v. Connecticut*. Simply stated, however, this line of attack completely rehashes arguments that Plaintiffs advanced previously, and the Court already considered and rejected Plaintiffs' efforts to distance this case from *American Electric Power Co.* as "distinctions without a difference." *Alec L.*, 863 F. Supp. 2d at 16. The Court will not indulge Plaintiffs' improper reliance on Rule 59(e) by devoting any additional analysis to these recycled arguments at this stage.

Finally, along with their request for relief under Rule 59(e), Plaintiffs also ask the Court for leave to amend their complaint under Federal Rule of Civil Procedure 15(a)(2). As the D.C. Circuit has repeatedly held, however, "once a final judgment has been entered, a court cannot permit an amendment unless the plaintiff 'first satisfies Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208. Insofar as Plaintiffs fail to establish any entitlement to relief under Rule 59(e), their request for leave to amend under Rule 15(a) is therefore denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration is **DENIED**. Plaintiffs either presented all of these arguments previously, or they failed to seize the opportunity to do so

---

> MS. OLSON:   Your Honor, I think you can go to the Supreme Court decisions in *Geer* and *Illinois Central* that establish that the Public Trust Doctrine is a fundamental attribute of sovereignty, and then look to the fact that when the states created the U.S. Constitution, they gave sovereignty to a federal government over natural resources. And the Public Trust case law from the Supreme Court, through state law and federal case law, all consistently finds that the Public Trust obligation and duty is a fundamental attribute of sovereignty that cannot be abridged. It can't be abdicated by the sovereign, whether it's a federal sovereign or a state sovereign.

(Dkt. No. 171 at 46:21-47:10). Other than their generalized reliance on the so-called federal public trust doctrine, Plaintiffs failed to invoke—or even reference—any particular constitutional provision or law underpinning their claims.

when they should have.  And despite Plaintiffs' apparent misconceptions, Rule 59(e) does not operate as a judicial mulligan.  Rule 59(e) offers relief only in narrowly-circumscribed and extraordinary circumstances—circumstances that cannot be found here.  At this juncture, Plaintiffs' recourse, if any, lies with the Court of Appeals.

An appropriate Order accompanies this Memorandum Opinion.


Date:  May 22, 2013

ROBERT L. WILKINS
United States District Judge